UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUSAY CHARAF, | Case No. 5:26-cv-01971-MAR |
| Petitioner, | |
| v. | ORDER ON PETITION FOR HABEAS CORPUS |
| JAIME RIOS et al., | |
| Respondents. | |

## I.

## __SUMMARY OF ORDER__

On April 20, 2026, Qusay Charaf ("Petitioner"), by and through counsel, filed a Petition for Writ of Habeas Corpus ("Petition") by a Person in Federal Custody pursuant to 28 U.S.C. § 2241. ECF Docket Nos. ("Dkt.") 1. Petitioner argues his detention in Immigration and Customs Enforcement ("ICE") custody without a pre-deprivation hearing violates his Fifth Amendment due process rights and the Administrative Procedure Act ("APA"). Petitioner seeks release. Id. at 17–18. [1] Respondents have filed an Answer. Dkt. 8. For the reasons set forth below, the undersigned **GRANTS** the Petition.

///

---

[1] All citations to electronically filed documents refer to the CM/ECF pagination.

## II.

## **BACKGROUND**

Petitioner is a citizen of Syria who arrived in the United States on February 19, 2024. Dkt. 1 ("Pet") at 5. Upon his entry, he was apprehended by immigration authorities and taken into custody. Id. Thereafter he was granted humanitarian parole and was released from custody on his own recognizance. Id. at 6. Shortly thereafter, DHS issued Petitioner an NTA. Id. Petitioner filed for asylum and has complied with all supervision conditions. Id. Petitioner has no criminal history. Id.

On October 11, 2025, Petitioner was re-detained without notice of any material change in circumnutates that could justify detention. Id. Petitioner is in custody at the Adelanto Detention Center ("ADC"). Id. at 3. Petitioner received a bond hearing on January 6, 2026, in which the Immigration Judge ("IJ") found that he lacked jurisdiction over the custody re-determination. Dkt. 1-1 at 6.

On April 20, 2026, Petitioner, through counsel, filed the instant habeas petition alleging that his re-detention without pre-deprivation notice and an opportunity to be heard violates the Fifth Amendment's Due Process Clause and the APA. Id. at 10–17. On April 22, 2026, Petitioner received a bond hearing where the IJ found that the Department had met its burden to demonstrate release would represent a flight risk. Dkt. 8-1, Ex. A.

Petitioner asks the Court to order his immediate release, enjoin Respondents from transferring Petitioner outside this District or deporting him pending these proceedings, and enjoin Respondents from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral judge in which the government bears the burden of proving, by clear and convincing evidence, that he is a flight risk or danger to the community. Pet at 18.

Respondents filed an answer on April 27, 2026. Dkt. 8, Answer. Respondents argue that the Petition is moot, that the Court lacks jurisdiction, that Petitioner failed to exhaust administrative remedies, and that the Petition does not identify any due

process violation.  Id.  Petitioner filed a reply.  Dkt. 9, Reply.  Thus, the matter stands submitted.

The Court finds that Petitioner's sudden detention—without any meaningful pre-deprivation notice or an opportunity to be heard—violates due process. Accordingly, the Court orders that the Petition be granted and a writ of habeas corpus be issued requiring Petitioner's immediate release and preventing his re-detention absent pre-deprivation notice and a hearing.

## III.

## LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.' ").  In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence.  Lambert v. Blodgett, 393 F.3d 943, 970 n.16 (9th Cir. 2004); Bellew v. Gunn, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## IV.

## DISCUSSION

Consistent with recent decisions by this District and others, the Court finds that Petitioner's re-detention—without notice or a meaningful opportunity to be heard—violates procedural due process.

**A.   8 U.S.C. § 1182(d)(5)(A)**

Petitioner is a noncitizen who, at the time of her detention, had been present in the United States for over three years, after being released from Respondents' custody pursuant to 8 U.S.C. § 1182(d)(5)(A).  Dkt. 1-2, Leroy Decl., Exhibit B.  Pursuant to 8 U.S.C. § 1182(d)(5)(A) ("§ 1182(d)(5)(A)"), "[t]he Secretary of Homeland Security

may, … in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States," with exceptions not applicable here.  "[S]uch parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  Id.

Termination of parole is governed by § 212.5(e), which states in relevant part:

> (1) Automatic.  Parole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or, (ii) if not departed, at the expiration of the time for which parole was authorized, and in the latter case the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required.

> (2)(i) On notice.  In cases not covered by paragraph (e)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole. …

8 C.F.R. § 212.5(e)(1)–(2)(i).

## B. DUE PROCESS

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  Demore v. Kim, 538 U.S. 510, 523 (2003) (citing Reno v. Flores, 507 U.S. 292, 306 (1993)).  The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property."  Zinermon v. Burch, 494 U.S. 113, 127 (1990).

4

In several recent decisions, courts in this District have found that immigration authorities violated or likely violated due process by re-detaining noncitizens who had been released shortly after their entry to the United States without notice or an opportunity to be heard.  See Cruz v. Lyons, et al., No. 5:25-cv-02879-MCS-MBK (C.D. Cal. Nov. 6, 2025) at Dkt. 12 (granting TRO ordering release of noncitizen who had been paroled into the United States and was re-arrested at appointment with United States Citizenship and Immigration Services); Yataco v. Warden, Adelanto Det. Facility, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), adopted, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in). See also M.V.F. v. Santacruz, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in).

As in these cases, the Court considers Petitioner's procedural due process claim under the familiar Mathews v. Eldridge framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest.  Mathews, 423 U.S. at 335.

**B.    ANALYSIS**

As an initial matter, Respondents contend this court lacks jurisdiction to consider Petitioner's request because: (1) the Petition is primarily a challenge to the Immigration Court's bond determination at the April 22, 2026 hearing, and (2) Petitioner must first exhaust administrative remedies by completing the appeal process with the BIA before seeking habeas relief.  Opp. at 5–9.  Petitioner argues the court has habeas jurisdiction to review the constitutionality and legality of his warrantless arrest, and his re-detention and the revocation of his parole without notice and a hearing before a neutral arbiter.  Reply at 2–3.

8 U.S.C. § 1226(e) provides: "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."  "That provision does not, however, preclude habeas jurisdiction over constitutional claims or questions of law." Hernandez v. Sessions, 872 F.3d 976, 987 (9th Cir. 2017) (quotation marks and citations omitted). "Claims that the discretionary bond process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of [28 U.S.C.] § 2241." Id. (cleaned up).

Furthermore, the Court finds that the Petition is not moot based on the bond hearing on April 22, 2026, since the Petitioner alleges he remains in custody in violation of his due process rights and Petitioner has a legally cognizable interest in the outcome of his constitutional challenge. See United States v. Hulen, 879 F.3d 1015 (9th Cir. 2018).  Further, Petitioner is not required to exhaust administrative remedies where irreparable harm would result.  Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004); Marroquin Ambriz v. Barr, 420 F. Supp. 3d 953, 961–962 (N.D. Cal. 2019) (waiving exhaustion requirements and noting the BIA lacks jurisdiction to decide questions of constitutionality of immigration laws).

Petitioner challenges the constitutionality and sufficiency of the process by which he was arrested, had his parole revoked, and was re-detained.  Reply at 3.  This court has habeas jurisdiction under § 2241 to consider these claims.  See Hernandez, 872 F.3d at 987; Noori v. LaRose, 807 F. Supp. 3d 1146, 2025 WL 2800149, at *5–8 (S.D. Cal. 2025) (finding district court had habeas jurisdiction to consider a petition challenging the lawfulness of the detention and revocation of parole of an asylum seeker); Magomed Mumaev, Petitioner, v. Fereti Semaia, et al., Respondents., No. 5:25-CV-03409-FLA (MAR), 2026 WL 530765, at *2 (C.D. Cal. Feb. 20, 2026) (same).

The Court finds that having been previously released on parole, Petitioner has a protected liberty interest in remaining free from detention.  See Garcia v. Noem, No. 25-CV-3759-LL-BLM, 2026 WL 194745, at *2 (S.D. Cal. Jan. 26, 2026); Hurd v. D.C.,

Gov't, 864 F.3d 671, 683 (D.C. Cir. 2017) ("a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated."). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the ... conditions [of release].' " Garcia, 2026 WL 194745, at *2 (citing Pinchi, 792 F. Supp. 3d at 1032); Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before they can be deprived of that interest. See Mathews v. Eldridge, 424 U.S. 319, 334–35 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

The Court finds that all three factors support a finding that the government's arrest of Petitioner without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. See Garcia, 2026 WL 194745, at *3. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his parole. See Pinchi, 792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal

proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citations omitted)); See Cruz, No. 5:25-cv-02879, Dkt. 12 at 6; Yataco, 2025 WL 4065463, at *1; C.A.R.V. v. Wofford, No. 1:25-CV-01395-JLT-SKO, 2025 WL 3059549 at * 10 (E.D. Cal. Nov. 1, 2025) (finding a petitioner had a constitutionally protected liberty interest in "approximately four years on parole"); Fernandez Lopez v. Wofford, No. 1:25-cv01226-KES-SKO, 2025 WL 2959319, at *4 (E.D. Cal. Oct. 17, 2025) (same, with respect to "nearly four years" of parole). See also Manzanarez v. Bondi, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to "over two years" on an order of release on recognizance).  Freedom from imprisonment is at the "core of the liberty protected by the Due Process Clause."  See Hernandez, 872 F.3d at 993 (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

With respect to the second Mathews factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive— or already has erroneously deprived—Petitioner of her liberty interest absent a pre-detention hearing."  Cruz, No. 5:25-cv-02879, Dkt. 12 at 7.  Petitioner was paroled into the United States under 8 U.S.C. § 1182(d)(5)(A), which requires that he be notified, in writing, of the reasons for revocation of his parole.  8 C.F.R. § 212.5(e)(1)–(2)(i). Petitioner was neither arrested pursuant to a warrant, as required by 8 U.S.C. § 1226(a), nor provided written notice of the termination of his parole and an opportunity to be heard before he was re-detained, as required by 8 C.F.R. § 212(e)(2). Respondents have not identified any evidence to suggest the purpose for which parole was authorized (i.e., release on humanitarian grounds while Petitioner's Asylum Application was pending) has been accomplished, or that a qualifying official has determined that neither humanitarian reasons nor public benefit warrant Petitioner's continued presence in the United States, as required under 8 C.F.R. § 212.5(e)(2). Additionally, Respondents held Petitioner in detention for over six months before he received a bond hearing, and he remains detained in their custody to this day—even

though his parole does not appear to have been revoked validly. Petitioner, thus, appears to have been deprived of his liberty interest erroneously based on Respondents' failure to comply with the INA, applicable federal regulations, and Petitioner's rights under the Due Process Clause. Mumaev, 2026 WL 530765, at *5.

Respondents argue due process was satisfied because Petitioner was granted a bond hearing before the Immigration Court on April 22, 2026. Opp. at 9–10. The Immigration Court's decision to deny bond six months after Petitioner was arrested and re-detained, however, cannot support Petitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of Petitioner's due process rights and, thus, invalid. See Mumaev, 2026 WL 530765.

Furthermore, the Immigration Court's decision appears to violate the APA, which provides in relevant part: "[a] reviewing court shall … (2) hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). "[T]he touchstone of 'arbitrary and capricious' review under the APA is 'reasoned decisionmaking.'" Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue, 926 F.3d 1061, 1080 (9th Cir. 2019) (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 52 (1983)). "[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." State Farm, 463 U.S. at 43 (quotation marks and citations omitted).

Respondents offer no explanation for why they chose to: (1) arrest, revoke the parole of, and re-detain Petitioner without complying with the requirements of 8 U.S.C. § 1226(a) and 8 C.F.R. § 212.5(e)(2); (2) detain Petitioner for six months without providing any hearing; and (3) provide Petitioner with only a bond hearing pursuant to § 1226(a)(2), without considering or addressing why he was not entitled to remain free on parole. Respondents, likewise, do not establish the Immigration Court considered the validity of Petitioner's detention before denying bond. See Answer.

9

Respondents' conduct and the Immigration Court's determination, thus, appear to violate the APA. See Mumaev, 2026 WL 530765, at *6 (citing Y-Z-L-H v. Bostok, 792 F. Supp. 3d 1123, 1146–47 (D. Or. 2025) (finding Respondents' termination of an asylum seeker's parole arbitrary and capricious in violation of the APA, based on their failure to provide any reason for the change to terminate petitioner's parole); Noori, 807 F. Supp. 3d 1146, 2025 WL 2800149, at *3, 13 (S.D. Cal. 2025) ("Petitioner's parole was revoked without an individualized determination or provided reasoning, which violated the APA."); Sanchez v. LaRose, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *4 (S.D. Cal. Sept. 26, 2025) (finding revocation of the petitioner's parole arbitrary and capricious because respondents did not state any reasons for the revocation).

Accordingly, the court finds the risk of an erroneous deprivation of Petitioner's liberty interest was substantial based on Respondents' failure to comply with the procedural requirements of the INA and associated federal regulations when he was arrested, had his parole revoked, and was re-detained.

Third, the government's interest in detaining Petitioners without notice, reasoning, and a hearing is low. See Pinchi, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."); Cruz, No. 5:25-cv-02879, Dkt. 12 at 7 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez, 872 F.3d at 994. Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" Sun v. Santacruz, No. 5:25-CV-

02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (quoting Doe v. Becerra, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025). There is no indication that providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government. See Garcia, 2026 WL 194745, at *3.

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in his unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Government's re-detention of Petitioner without adequate pre-deprivation process violated due process. See, e.g., Sanchez, 2025 WL 2770629, at *4 (finding the petitioner's parole was revoked without notice and a hearing and without a showing of a change of circumstances, thus violating her due process rights and rendering her detention unlawful); Garcia, 2026 WL 194745, at *3 (same); Mumaev, 2026 WL 530765 (same).

The proper remedy for the unlawful detention is Petitioner's immediate release subject only to the conditions of her preexisting parole. See Mumaev, 2026 WL 530765 (finding likelihood of success on merits of claim that Petitioner's arrest after being released on humanitarian parole violated due process despite post-deprivation hearing and ordering release); Noori, 2025 WL 2800149, at *1 (finding DHS violated the petitioner's due process rights by revoking his parole without notice or a hearing and ordering his immediate release); Sanchez, 2025 WL 2770629, at *5 (same); Garcia, 2026 WL 194745, at *3 (same); Ortega, 415 F. Supp. 3d at 970 (ordering immediate release after the petitioner was detained while out on bond without notice or pre-deprivation hearing).

11

Accordingly, the Court finds that Petitioner's re-detention was unlawful, orders his forthwith release, and enjoins the Government from re-detaining Petitioner absent notice and an opportunity to be heard with his counsel present.

///

///

///

## IV.

## ORDER

**IT IS THEREFORE ORDERED** that:

(2) the Petition is **GRANTED**;

(3) Respondents are **ORDERED** to immediately release Petitioner from custody subject only to the conditions of his preexisting parole;

(4) Respondents are **ORDERED** to return all of Petitioner's belongings, including his identification documents;

(5) Respondents are **ORDERED** to file a statement within one business day of Petitioner's release, attesting to Respondents' compliance with this Order; and

(5) Respondents are **ORDERED** to not re-detain Petitioner without written notice of the reasons for revocation of his parole and a pre-deprivation hearing before a neutral immigration judge to determine whether detention is warranted.  At such a hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.  See Pinchi, 792 F. Supp. 3d at 1038 (ordering that before the petitioner can be re-detained, she must be provided with a pre-detention bond hearing before a neutral immigration judge and that she may not be detained "unless the government demonstrates at such a bond hearing, by clear and convincing evidence, that she is a flight risk or a danger to the community and that no conditions other than her detention would be sufficient to prevent such harms").

12

Dated:  May 5, 2026

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge